**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIM. NO.  24-247** |
| **RYAN HAWN** | : | |

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The United States of America, by and through Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Timothy M. Lanni Assistant United States Attorney for the District, respectfully moves this Court to detain the defendant, RYAN HAWN, prior to trial. RYAN HAWN has created a variety of dangerous weapons without leaving his home including, 3D printed ghost guns and machineguns. Through a combination of acquiring commercially available parts and using a 3D printer, HAWN has the ability to produce totally untraceable firearms. HAWN is happy to provide these firearms to the highest bidder, whether it is an out of state purchaser or a convicted felon. Finally, in his continued wanton disregard for firearm regulation and safety, HAWN also makes available for sale machineguns which make the same firearms he sells to the highest bidder fully automatic.

Accordingly, there is clear and convincing evidence that HAWN is a danger to the community should be detained prior to trial. The government submits that there are no conditions or combination of conditions that will reasonably prevent HAWN from endangering the community. Thus, HAWN's detention pending trial is warranted.

I.      <u>FACTS</u>

A.      **05/01/2024 – Controlled Purchase of Firearm From ROLON and HAWN**

On this date, at approximately 10:17am, CHS placed a recorded telephone call to ROLON. The CHS asked to purchase a blue ghost gun and ROLON advised the CHS he would check with his guy in New Jersey.  ROLON and the CHS spoke again on the telephone at approximately 10:23am.  ROLON said he called his guy multiple times but he must still be sleeping.  ROLON told the CHS he wanted $1,100 for the ghost gun.  ROLON also told the CHS his guy is located in Sicklerville.

At approximately 5:56pm, the CHS received a telephone call from ROLON.  ROLON and the CHS agreed to meet in New Jersey. ROLON then sent a text message stating an address in Sicklerville.    At approximately 6:45pm, the black Jeep bearing PA registration LTM4843 parked at an address in Sicklerville.  ROLON exited the driver's seat, interacted with RYAN HAWN, and both individuals entered the residence.

At approximately 7:04pm, HAWN and ROLON exited from the garage door of the residence. ROLON entered the driver's seat of the black Jeep Cherokee and departed.

At approximately 7:09pm, the black Jeep Cherokee parked next to the CHS's vehicle at Wawa, located in Sicklerville, NJ.  ROLON exited the driver's seat of the black Jeep and entered the rear trunk compartment.  ROLON then entered the front passenger seat of the CHS's vehicle. ROLON provided the CHS with a Nike drawstring bag containing a blue Mac 11 style ghost gun engraved with "Mac Daddy" in exchange for $1,100.  ROLON stated this is from the guy who makes them and he can make custom orders using 3D printing.

At approximately 7:15pm, ROLON exited the CHS's vehicle, entered the rear trunk of the black Jeep, and re-entered the CHS's vehicle.  ROLON provided the CHS with two samples of

Percocets.  At approximately 7:16pm, ROLON exited the CHS's vehicle, entered the driver's seat of the black Jeep, and departed. This purchase was audio and video recorded by the CHS.

### B.      05/16/2024 – Controlled Purchase of Firearm From ROLON

On this date, at approximately 10:46am, CHS placed a recorded telephone call to ROLON.  The CHS asked to purchase an assault rifle and ROLON advised the CHS he would check with his guy.  During subsequent calls with ROLON, the CHS agreed on a price of $2,200 for the assault rifle and a "chip".  ROLON told the CHS he will pick up the gun from the same person that supplies him with crystal methamphetamine and the individual lives nearby ROLON. ROLON also told CHS as he previously discussed that the chip would turn the firearm fully automatic.

At approximately 2:32 PM, a black Jeep Cherokee bearing Pennsylvania registration LTM4843 parked next to the CHS's vehicle at a location in Philadelphia.  ROLON exited the driver's seat of the black Jeep, retrieved a duffel bag from the trunk of the vehicle, and entered the front passenger seat of the CHS's vehicle.  ROLON provided the CHS with a camouflage patterned AR-style firearm and one magazine containing 21 rounds of live ammunition.  At approximately 2:41 PM, ROLON exited the CHS's vehicle, entered the black Jeep, and re-entered the CHS's vehicle.  ROLON provided the CHS with a black plastic device referred to as a "chip" along with sample quantities of suspected crystal methamphetamine and suspected PCP. The CHS provided ROLON with $2,200 in USC.

### C.      05/30/2024 – Controlled Purchase of Firearm From ROLON and HAWN

On the evening of 5/29/2024, the CHS placed a recorded telephone call to ROLON.  The CHS asked to purchase a ghost handgun and ROLON advised the CHS he would check with his

guy but was good for the sale tomorrow.  Shortly after the CHS' call, ROLON placed a phone call to RYAN HAWN at the phone number subscribed to his mother.

Over the course of the morning of 5/30/2024, the CHS placed several recorded phone calls to ROLON.  ROLON asked if the CHS would be willing to meet "his guy" in NJ because the firearm supplier did not want to come into Philadelphia, PA and ROLON was too busy.  The CHS agreed and was told to meet ROLON's firearm supplier in Sicklerville at 2 PM.  During the same time period, ROLON also made several calls to HAWN.

At approximately 2:24 PM, HAWN left his residence operating a black and white dirt-bike. HAWN parked the dirt-bike at the fuel pumps of the WAWA and entered the store while using his cell phone.  At this time, ROLON was placing calls to both the CHS and HAWN to orchestrate HAWN finding the CHS in the parking lot.

At approximately 2:35 PM, HAWN exited the store, and entered the CHS' vehicle.  HAWN provided the CHS with a black firearm comprised of both privately manufactured parts as well as Taurus branded parts.  The firearm did not have a serial number on the lower receiver but the serial number on the upper receiver was partially obliterated.  The CHS provided HAWN with $800 in USC.  During the sale, HAWN provided his telephone number to the CHS and directed the CHS to save it under "H". HAWN then drove his dirt-bike back to his residence.

### D.    6/11/2024 – Controlled Purchase of Firearm from HAWN

On the morning of June 11, 2024, the CHS and HAWN exchanged text messages confirming a meeting time and location.  At approximately 1:06 PM, HAWN entered the front passenger seat of the CHS's vehicle.  HAWN provided the CHS with a box containing the black and silver firearm with a Smith & Wesson upper receiver, six live rounds of 9mm ammunition, and the small black plastic "switch", in exchange for $800.  The CHS asked HAWN to sell the

CHS an additional firearm and HAWN agreed.   At approximately 1:18 PM, HAWN exited the CHS's vehicle and departed.

Between 2:09 PM and 2:39 PM, the CHS and HAWN communicated to coordinate a new meeting location.  At approximately 2:45 PM, the CHS parked in the parking lot of 1401 Little Gloucester Road, Blackwood, New Jersey.  HAWN entered the front passenger's seat of the CHS's vehicle and provided the CHS with the black firearm containing a Taurus PT111 G2 upper receiver and 16 additional rounds of 9mm ammunition in exchange for an additional $600.

### E.        Arrest and search of HAWN's home on July 10, 2024

On this date, law enforcement agencies went to arrest HAWN at his home in New Jersey and to search his home for the aforementioned crimes pursuant to a search warrant issued in the District of New Jersey. After safely arresting HAWN, law enforcement recovered multiple 3D printed firearms from the home. Additionally, law enforcement recovered handgun accessories and parts from the home. HAWN's mother was home at the time and disclaimed any knowledge of the firearms or a 3D printer.

### F.        Maximum Penalties and Guidelines Range

The total maximum penalties HAWN is facing are as follow:  maximum term of imprisonment of 45 years, 3 years of supervised release, and a fine of $1,500,000. Due to the number of firearms, type of firearms, and machinegun modifications which HAWN sold during course of his conduct he is facing an advisory guideline range of 108 – 135 months.

## II.    <u>ARGUMENT</u>

There are no conditions of release that will reasonably assure the community's safety. HAWN is charged with using his home as an untraceable firearm manufacturing and distribution

center. With commercially available materials, HAWN is able to take custom orders for firearms and sell them to whomever he can come into contact with. HAWN showed no concern entering into a firearm trafficking partnership with ROLON, who provided HAWN with the 3D printer, or selling to the CHS who told ROLON that the CHS was an out of state felon. He was also quick to provide to the CHS devices that could make any of his already dangerous and untraceable firearms into a machinegun.

Further increasing HAWN's danger to the community and the inability of this Court to place any condition or combination of conditions to protect the community is HAWN's lack of legitimate employment. HAWN's livelihood comes from firearm trafficking. He is able to use cheap material to sell firearms for significant sums of money. He is also able to do this on short notice. On one day alone, HAWN was able to provide two ghost guns, ammunition, and a machinegun to the CHS in an afternoon. On this day, HAWN had no problem supplying the CHS with an additional ghost gun after the first sale.

HAWN is not a convicted felon and otherwise has no prohibition, other than any future conditions imposed by this Court, from continuing to purchase firearm materials or other items to make firearms. The inability of this Court to protect the community from HAWN's dangerous firearm trafficking lies in the nature of his conduct. He is able to print fully functionally 3D firearms from his home. These firearms are made with commercially available plastic spools. Even if he were released on home confinement, HAWN would have the ability, means, and incentive to continue to make these firearms.

III.     **CONCLUSION**

For the reasons described above, no condition or combination of conditions will reasonably

assure the safety of the community or the defendant's presence for trial.

WHEREFORE, the government respectfully requests that the Court detain the defendant

prior to trial.

Respectfully submitted,

JACQUELINE C. ROMERO
*United States Attorney*

/s/ *TIMOTHY M. LANNI*
TIMOTHY M. LANNI
*Assistant United States Attorney*